**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JAY CLOOKEY,**

                    **Plaintiff,**

                    v.

**CITIBANK, N.A.,**

                    **Defendant.**

                    **8:14-cv-1318
                    (GLS/DJS)**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Thompson Consumer Law Group, PLLC<br>5235 East Southern Avenue D106-618<br>Mesa, AZ 85206 | RUSSELL S. THOMPSON, ESQ. |
| **FOR THE DEFENDANTS:**<br>Stroock, Stroock Law Firm<br>2029 Century Park East<br>Los Angeles, CA 90067 | JULIA B. STRICKLAND, ESQ.<br>MARCOS D. SASSO, ESQ. |
| Lemery, Greisler Law Firm<br>50 Beaver Street<br>2nd Floor<br>Albany, NY 12207 | PAUL A. LEVINE, ESQ.<br>MEGHAN M. BREEN, ESQ. |

**Gary L. Sharpe
District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Jay Clookey commenced this action against defendant Citibank, N.A. alleging violations of the Fair Credit Reporting Act (FCRA).[1] (Compl., Dkt. No. 1.)  Pending is Citibank's motion to compel arbitration and to stay the action.  (Dkt. No. 11.)  For the reasons that follow, the motion is granted and the action is stayed pending arbitration.

## II. Background[2]

Clookey is the holder of a Citi Simplicity Visa credit card.  (Dkt. No. 11, Attach. 1 ¶ 5; Dkt. No. 21, Attach. 1 ¶¶ 2-3.)  Clookey applied for this credit card online by agreeing to terms and conditions provided on Citibank's website.  (Dkt. No. 21, Attach. 1 ¶ 2.)  After Clookey was approved, Citibank issued him the credit card account on October 8, 2013.  (*Id*.; Dkt. No. 11, Attach. 1 ¶ 5.)  Citibank subsequently mailed Clookey a welcome letter and a Card Agreement with the credit card to follow.  (Dkt. No. 11, Attach. 2 at 2-14.)  Clookey acknowledged that he received the credit card and welcome letter, but does not recall whether he received a Card Agreement.  (Dkt. No. 21, Attach. 1 ¶¶ 3-4.)

---

[1] *See* 15 U.S.C. §§ 1681-1681x.

[2] On a motion to compel arbitration, the court employs the same standard as a summary judgment motion and will review the record to determine whether Clookey has raised a triable issue of fact.  *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

The Card Agreement provided that it was "the contract between [the consumer] and [Citibank] regarding the account" and that "[i]t applie[d] if [the consumer] use[d] or authorize[d] use of the card or [if he or she] d[id not] close the account within [thirty] days after [Citibank] issue[d] the card." (Dkt. No. 11, Attach. 2 at 8.)  The Card Agreement also contained a choice-of-law clause designating South Dakota law, where Citibank is located, and an arbitration clause.  (*Id.* at 11-12.)  The arbitration clause permitted arbitration of all claims made by Citibank or the consumer "arising out of or related to [the consumer's] account, a previous related account or [the] relationship [between Citibank and the consumer]."  (*Id.* at 11.)  The clause also stated that claims may "be arbitrated only on an individual basis[,]" and "neither [the consumer] nor [Citibank] may pursue a [c]laim as part of a class action."  (*Id.*)  Clookey has actively used his Citi Simplicity account since he received the credit card in October 2013.  (Dkt. No. 11, Attach. 1 ¶¶ 7-8; Dkt. No. 11, Attach. 2 at 16-23.)

Clookey alleges that he received an email from Citibank in September 2014 stating that he may be eligible for a credit limit increase. (Compl. ¶¶ 16-17.)  The email explained that Citibank determined eligibility by the consumer's income and mortgage or rental payment, and a credit

3

bureau inquiry was not required. (*Id.* ¶ 17.) Clookey requested a credit limit increase. (*Id.* ¶ 18.) Despite being informed otherwise, Clookey alleges that Citibank obtained or "pulled" his credit report. (*Id.* ¶¶ 11, 19-20.)

On October 28, 2014, Clookey filed a class action complaint alleging Citibank pulled his and similarly situated consumers' credit reports when they applied for credit limit increases under false pretenses in violation of FCRA. (*See generally* Compl.) In lieu of an answer, Citibank filed the now pending motion to compel arbitration and to stay the action. (Dkt. No. 11.)

### III. Standard of Review

When evaluating a motion to compel arbitration under the FAA, the court will employ "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted). Accordingly, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4); *see Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). A party opposing arbitration cannot simply deny a movant's showing, but must submit evidence sufficient to raise a disputed fact. *See Oppenheimer & Co. Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## IV. Discussion

### A. Arbitrability of FCRA Claims

Citibank argues that the Card Agreement is a binding contract with Clookey and his FCRA claims must be referred to arbitration because they fall within the scope of the arbitration clause. (Dkt. No. 11, Attach. 3 at 5-8.) Clookey maintains that he never accepted the terms of the Card Agreement. (Dkt. No. 21 at 8-15.) Rather, he contends that he only agreed to the terms and conditions in his online application for the credit card, which he maintains did not contain arbitration or choice-of-law clauses. (*Id.* at 11-12.) Clookey asserts that his use of the credit card is not acceptance of the Card Agreement. (*Id.* at 12-15.)

"In addition to manifesting a policy strongly favoring arbitration when contracted for by the parties to a dispute, the [Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16,] establishes a 'body of federal substantive law of arbitrability[,] applicable to any arbitration agreement within the coverage of the Act.'" *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129 (2d Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24 (1983)).³  Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  However, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 192 (2d Cir. 2013) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

"In deciding whether a dispute is arbitrable, [the court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of [that] agreement encompasses the claims at issue."  *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005) (internal quotation marks and citation omitted), *abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010).  If federal statutory claims are alleged, the court must also assess whether Congress intended to exempt such claims from arbitration.  *See JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

---

³ Neither party disputes that the arbitration clause is governed by the FAA, as the Card Agreement clearly involved interstate commerce.  *See* 9 U.S.C. §§ 1, 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995).

The court can easily dispose of two of the three inquiries. First, Citibank asserts, and Clookey does not contest, that if there is an agreement to arbitrate, the dispute arising from pulling Clookey's credit report falls within its scope. (Dkt. No. 11, Attach. 3 at 10-12.) The Card Agreement's broad arbitration clause undoubtedly captures the present dispute. (*Id.*, Attach. 2 at 11.) Second, courts have repeatedly held that allegations of FCRA violations may proceed to arbitration. *See*, *e.g.*, *Gaul v. Chrysler Fin. Serv. Ams. LLC*, No. 1:13-CV-433, 2013 WL 3828549, at *2 (N.D.N.Y. July 23, 2013); *DeGraziano v. Verizon Commc'n, Inc.*, 325 F. Supp. 2d 238, 245 (E.D.N.Y. 2004).

Whether the parties formed an initial contract to arbitrate requires further discussion. "Arbitration is entirely a creature of contract." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006). To determine whether Clookey and Citibank contracted to arbitrate, courts apply state-law principles governing contract formation. *See Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002); *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 48 (2d Cir. 2000). Here, the Card Agreement's choice-of-law provision invokes South Dakota law. (Dkt. No. 11, Attach. 2 at 11.) Clookey, on the other hand, argues that New

7

York law should apply. (Dkt. No. 21 at 6-7.) In this case, whether South Dakota or New York law applies is immaterial to this dispute as the application of either demands the same result—Clookey and Citibank entered into the Card Agreement containing an arbitration clause. *See, e.g., Schnabel*, 697 F.3d at 119 (holding a choice-of-law analysis is legally insignificant when both states apply "substantially similar rules").

Both states require an objective manifestation of mutual assent to form a binding contract. *See Liebig v. Kirchoff*, 851 N.W.2d 743, 752 (S.D. 2014); *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999). Specifically regarding consumer credit cards, both South Dakota and New York define the use of a credit card as acceptance of a credit card agreement. *See* S.D. Codified Laws § 54-11-9 (providing "[t]he use of an accepted credit card . . . creates a binding contract between the card holder and the card issuer"); *Kelly v. Unifund CCR Partners Assignee of Palisades Collection LLC*, No. 09CV08510, 2009 U.S. Dist. LEXIS 126059, at *4 (S.D.N.Y. Oct. 7, 2009) (citing *Feder v. Fortunoff, Inc.*, 114 A.D.2d 399 (2d Dep't 1985)) (holding, under New York law, "[t]he issuance of a credit card constitutes an offer of credit, and the use of the card constitutes acceptance of the offer").

8

Here, Clookey used his Citi Simplicity Visa credit card since October 2013, demonstrating that he accepted Citibank's Card Agreement. (Dkt. No. 11, Attach. 1 ¶¶ 7-8; Dkt. No. 11, Attach. 2 at 16-23.) Clookey maintains that he only accepted the terms and conditions presented on Citibank's website when he applied for the credit card. (Dkt. No. 21 at 8.) However, his assertion is contradicted by record evidence. After Clookey applied and Citibank approved his application, Citibank sent him a welcome letter that contained the Card Agreement. (Dkt. No. 11, Attach. 2 at 2-14.) The Card Agreement explicitly stated that it was the contract that governed the account and would apply after the consumer used the account or did not cancel the account within thirty days. (*Id.* at 8.)

Clookey acknowledges receipt of the welcome letter and the credit card, (Dkt. No. 21, Attach. 1 ¶ 3), but does not recall whether he received the Card Agreement, (*id.* ¶ 4). New York and South Dakota recognize a presumption of receipt when a mailing is properly sent through regular office procedures. *See Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2d Cir. 2010) (citing New York law); *see also Cox v. Brookings Int'l Life Ins. Co.*, 331 N.W.2d 299, 301 (S.D. 1983). Citibank is

9

entitled to this presumption because it submitted an affidavit of Cathleen Walters, a Senior Vice President for a Citibank subsidiary, attesting that the Card Agreement was mailed to Clookey with the welcome letter on October 8, 2013. (Dkt. No. 11, Attach. 1 ¶¶ 5-6.) Walters also attached a copy of the mailing to her affidavit containing Clookey's address. (*Id.*, Attach. 2 at 2-14.) Clookey fails to rebut this presumption, and the court must presume he received the Card Agreement especially after acknowledging receipt of the welcome letter contained in the same mailing. (Dkt. No. 21, Attach. 1 ¶ 3.)

Instead, Clookey argues that the Card Agreement unilaterally modified the website's terms and conditions, which he identifies as the original agreement. (Dkt. No. 21 at 11-15.) Specifically, Clookey contends that Citibank did not provide reasonable notice that the Card Agreement contained new contractual terms governing the account. (*Id.* at 13-14.) Whether the Card Agreement is treated as the original agreement or a modification of the website's terms and conditions is legally insignificant. Clookey received the Card Agreement which explicitly stated that it was the contract governing his account with Citibank, and the contract applied if Clookey used or continued to use the

card. (Dkt. No. 11, Attach. 2 at 8.) Because Clookey used and continued to use the credit card, under either New York or South Dakota law, he assented to the terms of the Card Agreement, including the arbitration clause.

**B.    Individual or Class Arbitration**

Citibank also argues that the text of the arbitration clause mandates that Clookey's claims be arbitrated individually rather than as a class. (Dkt. No. 11, Attach. 3 at 13-14.) The relevant clause language provides:

> [c]laims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator may award relief only on an individual basis, and neither [the consumer] nor [Citibank] may pursue a [c]laim as part of a class action or other representative action.

(*Id.*, Attach. 2 at 11.) Clookey makes no argument in opposition.

"The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks and citations omitted). Thus, "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v.*

11

*AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Accordingly, courts have rejected class arbitration if an arbitration agreement was silent on the issue. *See id.* at 687; *see also Anwar v. FairField Greenwich Ltd.*, 950 F. Supp. 2d 633, 637 (S.D.N.Y. 2013); *Sanders v. Forex Capital Mkts., LLC*, No. 11 Civ. 0864, 2011 WL 5980202, at *10 (S.D.N.Y. Nov. 29, 2011). If an agreement could reasonably be interpreted to authorize class arbitration, at least one district court in the Circuit has held that such issue should be referred to the arbitrator. *See Edwards v. Macy's Inc.*, No. 14CV-8616, 2015 WL 4104718, at *12 (S.D.N.Y. Jun. 30, 2015).

Here, unlike silent or unclear arbitration clauses, the Card Agreement addresses class arbitration and expressly precludes it. (Dkt. No. 11, Attach. 2 at 11.) The arbitration clause explicitly states that "[c]laims brought as part of a class action . . . can be arbitrated only on an individual basis." (*Id.*) Consequently, Clookey must arbitrate his FCRA claims individually. *See Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 120-21 (2d Cir. 2011) (noting that "the primary purpose when enforcing arbitration agreements is to give effect to the intent of the parties") (internal quotation marks and citation omitted). This threshold issue is properly decided by the court rather than an arbitrator because the clear

12

language of the clause is not susceptible to an interpretation that contemplates class arbitration. *Contra Edwards*, 2015 WL 4104718, at *12.

**C.    Stay of the Action Pending Arbitration**

Finally, the proceedings are stayed pending arbitration. *See* 9 U.S.C. § 3. Citibank has requested a stay, (Dkt. No. 11, Attach. 3 at 14-15), and the court concludes that all of Clookey's FCRA claims are subject to arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (recognizing a Circuit split over whether to stay or dismiss an action subject to arbitration and holding "that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested"); *see also Empire State Ethanol & Energy, LLC v. BBI Int'l*, No. 1:08-CV-623, 2009 WL 790962, at *10 (N.D.N.Y. Mar. 20, 2009).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Citibank's motion to compel arbitration and stay the action (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that the parties file a status report within six months of

this order or notify the court within seven (7) days of the outcome of the arbitration, whichever is sooner; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 9, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge